UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONNESHIA DOSS,

    Plaintiff,

-vs-

COUNTY OF WAYNE, a municipal corporation,
Wayne County Deputy Sheriffs DARRICK
RUSHING, PHILIP KOZLOWSKI, MICHAEL
BEMIS, JOHN DOE 1, and JOHN DOE 2,
individually and in their official capacities,

    Defendants.

_____/

Case No. 06-15065
Judge Avern Cohn

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is a § 1983 case. Plaintiff Jonneshia Doss ("Doss") brings suit against defendants Wayne County and Wayne County Sheriff's Deputies Darrick Rushing ("Rushing"), Philip Kozlowski ("Kozlowski"), Michael Bemis ("Bemis") and John Doe 1 and 2 ("Does") for violations of state law and her federal constitutional rights. Doss says that, after an incident in which another woman was pushed in front of a moving car, she was arrested without probable cause and sustained an injury to her wrist when she was handcuffed too tightly. Doss also claims that police officers gave false or misleading information in the police report of the incident and at her arraignment on assault charges in state court. Specifically, Doss makes the following six claims; she has stipulated to dismiss claims III and V:

Count I: False arrest/false imprisonment;

Count II: Willful and wanton misconduct, deliberate indifference, gross negligence;

~~Count III: Intentional Infliction of Emotional Distress~~;

Count IV: 42 U.S.C. § 1983 claim under the 4th, 8th, and 14th Amendments;

~~Count V: 42 U.S.C. § 1983 claim for medical care under the 8th Amendment~~; and

Count VI: 42 U.S.C. § 1983 Monell claim under the 4th, 8th, and 14th Amendments.

Before the Court is defendants' motion for summary judgment. For the reasons that follow, defendants' motion will be granted.

## I. FACTS

### A. The Incident

On January 16, 2006, Jacquelynne Brown ("Brown") was pushed into the street and struck by a car traveling south on Woodward Avenue in the City of Highland Park, Michigan. William Bratton ("Bratton"), the driver of the car that struck Brown, stopped to render aid. Doss and Krisain Boyd ("Boyd"), who were standing on the sidewalk near Brown as the accident occurred, fled the scene.

Rushing was the first officer to arrive at the scene of the accident. He interviewed Brown before she was taken to the hospital. Brown indicated that two women whom she knew as fellow residents of the Doorstep Homeless Shelter had followed her as she left the shelter and pushed her into the car; Brown repeatedly said "they pushed me." Bratton confirmed Brown's account, telling Rushing that both Boyd and Doss pushed Brown and then fled.

2

A short time later, Detroit Police officers arrested Doss and Boyd about half a mile from the scene of the accident. Kozlowski received a radio report and drove to the scene of the arrest to take the women into custody. When Kozlowski arrived, the Detroit police had already handcuffed both Doss and Boyd, who were standing behind an unmarked squad car. The Detroit Police officers released their handcuffs, and Kozlowski and his partner each re-handcuffed one of the women; Kozlowski cannot recall whether he handcuffed Doss or Boyd. Doss alleges that Kozlowski handcuffed her in an exceedingly tight manner and refused to loosen her handcuffs despite her complaints. Kozlowski testified at his deposition that Doss never complained that her handcuffs were too tight.

Kozlowski transported Doss and Boyd back to the scene of the accident, where Bratton positively identified them as the two female perpetrators. Doss and Boyd were then transported to the nearby Wayne County Sheriff's Highland Park mini-station and booked on charges of assault with intent to murder.

Later the same day, Bratton went to the Highland Park mini-station and prepared a written statement ("Bratton's statement") in which he said that only "*one* female shoved another female in her back and into the side (right) of my car." (Emphasis added.) Because Bratton's statement was not made until after Rushing prepared the police report of the incident, the report does not include any reference to Bratton's statement.

After she was booked, Doss was transferred to the William Dickerson Detention Facility in Hamtramck, Michigan. After two days at Dickerson, Doss was transferred to Wayne County Jail, where she remained until her release on March 17, 2006.

3

## B. The Investigation

The following day, January 17, 2006, Bemis was assigned to investigate the incident in which Brown was injured. First, Bemis reviewed both Bratton's statement and Rushing's police report. He then visited Henry Ford hospital to interview Brown. During the interview, Brown told Bemis that she was taking a walk down Woodward Avenue and Doss and Boyd followed her, taunting her about a previous altercation at the shelter. Brown said as she was waiting on the curb for traffic to clear she felt hands from both Doss and Boyd push her into Bratton's car.

Bemis interviewed Bratton the same day, following his interview with Brown. Consistent with his written statement, Bratton said that he only saw Boyd, and not Doss, push Brown into his car.

During his deposition, Bemis testified that he thought Doss was an instigator in the incident based on the conflicting information that he had uncovered. Bemis said that he believed both Boyd and Doss walked up behind Brown at the intersection, but he could not determine with certainty whether one or both of them pushed Brown. Bemis also indicated that he was more inclined to believe that Doss was responsible because she had fled the scene with Boyd rather than stopping to help Brown.

Prior to finalizing his investigation, Bemis asked Doss to explain the incident in writing. Doss handwrote a statement explaining that she had no idea that Boyd was going to push Brown in front of the car. Bemis says that Doss did not complain of any wrist pain at the time she wrote out the statement.

## C. The Arraignment

4

On January 18, 2006, Doss and Boyd were arraigned in front of state Magistrate Judge Chastang in Highland Park. During the arraignment, Bemis testified that Brown told him that "two women that stayed with her at the shelter had pushed her into the oncoming traffic." He also testified that "Witness Bratton also provided a description of the *two* women that he saw push the complainant into the roadway." (Emphasis added). However, Bemis added that when he interviewed Bratton the following day at the Highland Park Mini-Station, Bratton told him that "Defendant Boyd then pushed the complainant into the passenger side of the car. . . [h]e [Bratton] stated Defendant Doss did not push the complainant." At the conclusion of the hearing, Judge Chastang signed a felony warrant for assault with intent to commit murder naming Doss and Boyd.

When Judge Chastang was deposed, he stated that he was never made aware of any independent witness who informed the arresting officers that Doss did not push Brown into the street. Judge Chastang also testified that if he had known that there was an independent witness who "had given information to the arresting officers that specifically identified Defendant Boyd and not Defendant Doss as being the perpetrator of the crime," he would not have signed the warrant naming Doss. Judge Chastang also indicated that the witness statements (including Bratton's statement) and other documents were not with him at the time when he issued the warrant.

The transcript of the arraignment indicates that, contrary to Judge Chastang's recollections, Bemis testified that on January 17, Bratton told him that Doss did not push Brown.

### D. Plaintiff's Alleged Injuries

5

On January 31, 2006, a state district court held a preliminary examination in the criminal action against Doss. Doss's bond was set at $25,000. Because she was unable to make bond, Doss spent the next 61 days in the Wayne County Jail, until her case was dismissed for lack of probable cause on March 17, 2006.

Doss alleged during her deposition that she developed carpal tunnel syndrome as a result of Kozlowski handcuffing her wrists too tightly. Doss said that she was diagnosed with carpal tunnel by an obstetrician-gynecologist during an appointment to receive prenatal care. Doss concedes that she has never sought diagnosis or treatment for her wrist from an orthopedist or general practitioner and that there are no medical records to support the alleged diagnosis. She also admits that she did not tell anyone about her alleged wrist injury or ask for medical treatment at the Highland Park mini-station or the Dickerson Detention Facility.

The first documentation of Doss's alleged injury is on March 8, 2006, when she sought medical treatment at Wayne County Jail after complaining of pain in her right wrist. A physician, Dr. George Wilson, M.D., examined Doss at the jail. Doss told Dr. Wilson that her wrist pain developed after being handcuffed by Kozlowski some seven weeks earlier. Dr. Wilson noted a contusion to the right wrist in Doss's medical record, but in his affidavit he says that this notation was made solely in response to Doss's complaints; Dr. Wilson says that his examination revealed no contusions, swelling, or any other visible sign of injury to the wrist. Dr. Wilson referred Doss to a radiologist, Dr. Herbert Weisenthal, who also found no signs of injury. Dr. Wilson states that, in his opinion, Doss's complaint of pain in her wrist was likely the result of an event that occurred after she was handcuffed, closer in time to when she was examined.

After this case commenced, the court ordered Doss to submit to an additional medical examination. Dr. Zachary J. Endress, Jr., M.D., an orthopedist, examined Doss on June 25, 2007. Dr. Endress found no evidence of any injury to Doss's wrist and opined that she did not require any medical treatment.

## II. LEGAL STANDARD

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

7

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### III. SECTION 1983 CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS

To prevail in a § 1983 claim, a plaintiff must show that a "person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." Waters v. City of Morristown, 242 F.3d 353, 358-59 (6th Cir. 2001). Here, Doss makes three distinct claims under § 1983: (1) Kozlowksi arrested Doss without probable cause in violation of the Fourth Amendment, (2) Kozlowski used excessive force in handcuffing Doss in violation of the Fourth Amendment, and (3) Bemis made false statements to Judge Chastang at the arraignment in violation of the Fourth Amendment.

### A. Probable Cause

### 1. Legal Standard

The Fourth Amendment requires that "a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." Williams ex rel. Allen v. Cambridge Bd. of Educ., 370 F.3d 630, 636 (6th Cir. 2004). Probable cause is defined by asking whether "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). It is "assessed from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Klein v. Long, 275 F.3d 544, 550 (6th Cir. 2001) (citation and internal quotation marks omitted). "An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." Caldwell v. City of Detroit, 2007 U.S. Dist. LEXIS 78048 (E.D. Mich. 2007) (citing Ahlers v. Schebil, 188 F.3d 365, 370 (6th Cir. 1999)).

### 2. Analysis

Doss's § 1983 claim for violation of the Fourth Amendment fails because Kozlowski had probable cause to make the arrest. Probable cause existed because (1) Brown stated that both Doss and Boyd had pushed her into Bratton's car; (2) at the scene, Bratton agreed with Brown's account, stating that both both Doss and Boyd had

9

pushed Brown; (3) Bratton positively identified Doss and Boyd when they were transported back to the scene; and (4) Doss and Boyd fled the scene of the incident without stopping to help Brown. See Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). Taken together, this evidence is more than sufficient to establish probable cause. Bratton's statement, which tends to exculpate Doss, was not made until sometime later and thus does not bear on the question of whether probable cause existed at the time of the arrest. The court will therefore grant defendants' motion for summary judgment on this claim.

## B. Excessive Force

### 1. Legal Standard

The use of force by law enforcement officers is contrary to the Fourth Amendment if it is objectively unreasonable under the circumstances. Graham v. Conner, 490 U.S. 386, 394 (1989). Claims of excessively forceful handcuffing are reviewed under the general rubric of excessive force. Martin v. Heideman, 106 F.3d 1308, 1313 (6th Cir. 1997).

To prevail on an excessive force claim, a plaintiff must show not only that her Fourth Amendment rights were violated; "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The relevant, dispositive inquiry in determining whether a right is

clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.; see also Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.").

In the case of a claim of excessively forceful handcuffing, "[s]omething more than negligence, or the mere failure to heed a prisoner's complaints, must be shown. If every case in which a person taken into custody with handcuffs were to give rise to a question of constitutional dimension requiring factual inquiry, literally every such case would require submission to the fact-finder." Nemeckay v. Rule, 894 F. Supp. 310, 315 (E.D. Mich. 1995). "[W]hen there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment." Neague v. Cynkar, 258 F.3d 504, 508 (6th Cir. 2001). It follows that to survive summary judgment on such a claim, a plaintiff must proffer some objective evidence of physical injury resulting from the handcuffing. Hannula v. City of Lakewood, 907 F.2d 129, 132 (10th Cir. 1990), abrogated on other grounds by Dixon v. Richer, 922 F.2d 1456, 1461 (10th Cir. 1991); Mason v. Adams, No. 05-72346, 2007 WL 162192 at *4-5 (E.D. Mich. Jan. 17, 2007).

## 2. Analysis

Doss's claim for excessive force fails because she has failed to proffer any objective proof of injury to her wrist. The medical evidence in the record shows that three physicians agree that there is no sign of any injury to Doss's wrist. The court

accepts Doss's contention that she complained to Kozlowski about the tightness of her handcuffs, but there is no evidence that Doss complained of any actual injury or sought any medical treatment until March 8, nearly two months after the incident in question. Doss's allegation that she experienced pain in her wrist is not by itself sufficient to sustain a claim of excessive force. "Handcuffing is not meant to be pleasant, and it may certainly be uncomfortable, and even to a certain extent painful. However, that alone does not amount to proof of a claim of excessive force." Mason, 2007 WL 162192 at *5. Where, as in this case, "the injury is minimal, it is likely that the force creating the injury was also minimal." Hannula, 907 F.2d at 132. The court will therefore grant defendants' motion for summary judgment as to the claim of excessive force.

### C. False Statements Made to the Magistrate Judge

Using false statements to obtain a warrant, where those false statements are necessary to the finding of probable cause, violates the Fourth Amendment. Franks v. Delaware, 438 U.S. 154, 168 (1978). In this case, however, the transcript of Doss's arraignment shows that Bemis accurately described the evidence and did not fail to mention Bratton's exculpatory written statement. Judge Chastang's contrary recollections of the hearing are not sufficient to create a genuine issue of material fact in regard to the false statements claim.

## IV. SECTION 1983 MONELL CLAIM AGAINST WAYNE COUNTY

Doss alleges that Wayne County failed to establish, maintain or enforce proper police procedures that would have prevented the allegedly unconstitutional actions of the officers involved in this case. To prevail on a failure to train claim under § 1983, a plaintiff must prove that "[1] a training program is inadequate to the tasks that the officers must perform; [2] that the inadequacy is the result of the [county's] deliberate indifference; and [3] that the inadequacy is closely related to or actually caused plaintiff's constitutional injury." Hill v. McIntyre, 884 F.2d 271, 275 (6th Cir. 1989). Where a policy is not facially unconstitutional, a plaintiff must bring additional proof beyond her own unique circumstances in order to establish a valid claim under § 1983. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

Here, Doss has failed to proffer any evidence whatsoever related to Wayne County's alleged failure to train its sheriff's deputies. Wayne County has submitted evidence showing that it regularly conducts a variety of training programs and that Kozlowski, Bemis, and Rushing have regularly participated in such programs. Given the complete lack of evidence to support Doss's § 1983 Monell claim, the Court will grant summary judgment.

## V. FALSE ARREST/FALSE IMPRISONMENT

The Michigan Supreme Court defines false imprisonment as "an unlawful restraint on a person's liberty or freedom of locomotion." Stowers v. Wolodzko, 191 N.W.2d 355, 362 (Mich. 1971). A false arrest is an illegal or unjustified arrest, i.e., an arrest that was not based on probable cause; the actual guilt or innocence of the person arrested is irrelevant. Lewis v. Farmer Jack Div., 327 N.W.2d 893, 894 (Mich. 1982).

13

"To prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause . . . If the arrest is legal, there has not been a false arrest or a false imprisonment." Peterson Novelties, Inc. v. City of Berkley, 672 N.W.2d 351, 362 (Mich. App. 2003) (citations omitted). For the reasons stated above, the officers had probable cause to arrest Doss. Her claim for false arrest and false imprisonment therefore fails.

## VI. GROSS NEGLIGENCE

The individual defendants in this case are governmental employees and are therefore entitled to governmental immunity by reason of the Michigan Governmental Tort Liability Act, MCL § 691.1401. "Michigan statutory law provides that a governmental employee is not responsible in tort for personal injuries unless the governmental employee is grossly negligent, which the statute defines as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" Tarlea v. Crabtree (In re Estate of Tarlea), 263 Mich. App. 80, 82 (2004) (citing Stanton v. Battle Creek, 466 Mich. 611, 619 (2002)). With regard to claims of gross negligence in the law enforcement setting, the Michigan Supreme Court has said that

> [p]olice officers . . . must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, e.g., make an immediate arrest, pursue a suspect, issue a warning, await backup assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner, e.g., the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc.

14

Ross v. Consumers Power Co., 420 Mich. 567, 659-60 (1984).  When a plaintiff alleges that a police officer handcuffed her too tightly during an arrest, the plaintiff must present objective evidence of a physical injury in order to establish gross negligence.  Oliver v. Smith, 269 Mich. App. 560, 566 (2006).

Doss makes three distinct claims under the umbrella of gross negligence.  First, she says that Kozlowski was grossly negligent in handcuffing her too tightly.  As discussed above, the record contains no objective evidence of any injury resulting from the handcuffs.  Under Oliver, defendants are therefore entitled to summary judgment.

Second, Doss says that Rushing failed "to give accurate and truthful exculpatory information" when he wrote his police report.  However, Doss fails to point to any specific allegation in Rushing's report that she believes is inaccurate.  There is nothing in the record to contradict the statements that both Brown and Bratton told Rushing at the scene that both women had pushed Brown; Bratton's statement that only one woman actually pushed Brown was made in a subsequent interview with police and could not have been included in Rushing's report.  Summary judgment is appropriate on this claim as well.

Finally, Doss claims that Bemis was grossly negligent in giving misleading information to prosecutors and Judge Chastang.  However, the investigator's report that Bemis prepared accurately notes that Bratton originally stated that both women had pushed Brown, then stated the following day that only Boyd had pushed her.  The transcript of the arraignment hearing indicates that Bemis accurately described the

contents of Bratton's statements to Judge Chastang and did not conceal his later statement that Doss did not push Brown. This claim is also without merit.

## VII. CONCLUSION

For all the reasons stated above, defendants' motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

                                     s/Avern Cohn
                                     AVERN COHN
                                     UNITED STATES DISTRICT JUDGE

Dated: January 2, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 2, 2008, by electronic and/or ordinary mail.

                                     s/Julie Owens
                                     Case Manager, (313) 234-5160